UNITED STATES of America, Plaintiff–Appellant,

v.

Manuel Rodriguez PADRO, Defendant–Appellee.

No. 94–3630.

United States Court of Appeals, Sixth Circuit.

Argued March 10, 1995.

Decided April 21, 1995.

Blas E. Serrano, Asst. U.S. Atty., Cleveland, OH, Sean Connelly (argued and briefed), U.S. Dept. of Justice, Crim. Div., Washington, DC, for plaintiff-appellant.

Jaime P. Serrat (argued and briefed), Serrat & Naso, Cleveland, OH, for defendant-appellee.

Before: KENNEDY and NORRIS, Circuit Judges; TAYLOR, District Judge.*

* The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

TAYLOR, District Judge.

The United States appeals the district court's order granting Defendant's motion to suppress evidence seized during a motor vehicle search. The question presented is whether the district court properly concluded that Officer Kevin Monnolly lacked the probable cause necessary to search the car in which Defendant had been stopped. For the reasons set forth below, we must reverse the suppression order.

## I.

On March 25, 1994, at 4:30 P.M., Officer Monnolly, a detective with the Parma, Ohio, Police Department, received a call through his pager from an unfamiliar number in another state, and after obtaining an interpreter was able to converse with the unknown Spanish-speaking woman who had called him. The woman informed Monnolly that two men, whom she identified as "Dario" and "Robert," would be transporting a kilogram of cocaine by car from Rochester, New York, along interstate highway 90 in a vehicle which would arrive in Cleveland, Ohio at approximately 8:00 that evening. The informant described the vehicle as a gray Buick Riviera, bearing license plate number "NQE872." The informant also told Monnolly that the cocaine would be hidden in a secret compartment near the car's rear arm rest.

Monnolly had spent the previous two of his fifteen years in the Parma Police Department as a member of the Caribbean Drug Task Force, a team organized by the United States Attorney's Office, and including officers from several different local law enforcement agencies. Monnolly was, accordingly, able to corroborate several aspects of the anonymous informant's tip because of information he had gathered during prior Task Force investigations. He had, for example, observed another suspected drug dealer, Manuel Castro Guerrero, driving and apparently selling drugs from that Buick Riviera on two separate occasions. Moreover, an

earlier title search on that vehicle had revealed that it was registered under a fictitious name. In addition, Monnolly recalled that an informant used in another investigation had also advised police that a Dominican male named "Dario" was transporting a kilogram of cocaine from Rochester to Cleveland on an almost daily basis. That investigation had culminated in the conviction of thirteen defendants on drug charges. Monnolly also knew of a "Robert" from surveillance in an earlier drug investigation.

Monnolly organized a surveillance team along highway 90, and at 7:10 P.M. the officers observed the described Riviera travelling west near Mentor, Ohio. Defendant Manuel Padro was driving the vehicle, and Robert LeBron was in the passenger seat. The car pulled off the highway into a gas station and Monnolly saw LeBron exit the car and pump gas. At that point, Monnolly realized that he had seen Robert LeBron twice before during surveillance of the aforementioned Guerrero's home. When LeBron finished refueling, he reentered the vehicle, left the gas station, and returned to highway 90, continuing westward.

When the car arrived at the Route 2 interchange, Monnolly ordered the Euclid police to stop the car. The police officers removed Padro and LeBron from the car, handcuffed them, and forced them to the ground. Monnolly then also recognized Padro from prior investigations. In October of 1993, Parma police had stopped Padro for speeding after he was seen leaving a warehouse which was under surveillance, and Monnolly had also seen Padro driving with Guerrero, once leaving Guerrero's vehicle to place calls from a public telephone for approximately ten to fifteen minutes.

Monnolly looked into the car and immediately noticed that a plastic panel near the rear arm rest was protruding approximately one quarter of an inch, exactly where the informant had said there was a secret compartment. Then he saw a small hook, which he recognized from prior drug investigations as an electronic release switch used to open hidden compartments. Monnolly flipped the switch, opened the compartment, and discov-ered a kilogram of cocaine. Police then placed Padro and LeBron under arrest.

## II.

Padro, LeBron, and Guerrero were thereafter indicted. Padro was charged with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1), and one count of possession of cocaine, in violation of 18 U.S.C. § 2. Padro and LeBron moved to suppress the kilogram of cocaine seized from the car, arguing that the search was without probable cause and unlawful. They have conceded, however, that police had reasonable suspicion sufficient to support an investigatory stop, under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The district judge conducted a suppression hearing and concluded that LeBron had no standing to challenge the search, because he was only a passenger in the car, but that the sole basis for the search had been the informant's tip, which failed to establish probable cause. Accordingly officer Monnolly's warrantless search of the vehicle was held to have violated the Fourth Amendment, and the evidence seized, the kilogram of cocaine, was suppressed, in Padro's prosecution.

■ This Court has jurisdiction of the government's timely appeal, under 18 U.S.C. § 3731. The appeal does not question any of the district court's factual findings, but challenges the legal conclusion that Monnolly did not have probable cause to search the car. Legal conclusions, such as a finding of probable cause, are reviewed by this Court *de novo. United States v. Thomas,* 11 F.3d 620, 627 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994).

■ Although searches of vehicles capable of movement on public roads are exempt from the warrant requirement of the Fourth Amendment, a demonstration of probable cause is nevertheless required, to justify such a search. *United States v. Wright,* 16 F.3d 1429, 1437 (6th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994). Probable cause has been defined as "reasonable grounds for belief, supported by less than prima facie proof but more than

mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Determinations of probable cause are based on a review of the "totality-of-the-circumstances," and involve a practical, common sense review of the facts available to the officer at the time of the search. *Illinois v. Gates,* 462 U.S. at 230, 103 S.Ct. at 2328; *United States v. Sims,* 975 F.2d 1225, 1238 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993); *United States v. Nigro,* 727 F.2d 100, 103 (6th Cir.1984).

It appears to this Court that the totality of the facts and circumstances known to Monnolly before he opened the secret compartment were more than sufficient to establish a fair probability that contraband or evidence of a crime would be found therein. *Gates, supra.* In reaching this conclusion, this Court first notes that the information provided by the informant was highly detailed. The richness of detail provided by an informant increases the reliability of the information. *United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 531, 130 L.Ed.2d 434 (1994). Moreover, the informant accurately predicted Padro's travel route, vehicle, companion, and approximate time of arrival in Cleveland. As the Court in *Illinois v. Gates* stated:

the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.... If the informant had access to accurate information of this type ... it was not unlikely that he also had access to reliable information of the ... alleged illegal activities.

*Gates,* 462 U.S. at 245, 103 S.Ct. at 2335 *(footnote omitted ).* Thus, the amount of detail, as well as the type of detail provided by the informant suggests that the information was trustworthy.

■ Notwithstanding the richness of detail offered by the informant, the district court properly concluded that the tip alone could not justify a finding of probable cause. The informant's anonymity and failure to state the basis of her knowledge severely undercuts the reliability of the information. *See Gates,* 462 U.S. at 227, 103 S.Ct. at 2326. However, the district court failed to consider officer Monnolly's extensive corroboration of all aspects of the informant's tip.

Prior to the stop, Monnolly had personally verified the informant's description of the vehicle, as well as its location, direction, and number of occupants. Monnolly was also aware that another suspected drug dealer had been observed apparently selling drugs from the same vehicle, and that it was registered under a fictitious name. Thus, in addition to confirming the specific facts provided by the informant about the vehicle, Monnolly also had independent information which suggested that the vehicle was involved in criminal activity. He was also aware of the type of compartments and latches utilized in such vehicles, from prior experience.

■ Monnolly had corroborated the names of the two occupants of the vehicle provided by the informant, and was aware of passenger Robert LeBron's past association with Guerrero. Although mere companionship with an individual suspected of criminal activity does not satisfy the probable cause standard, such association is "part of the 'practical considerations of everyday life' which can be considered in determining whether there is probable cause." *United States v. Wright,* 577 F.2d 378, 380 (6th Cir.1978) *(quoting United States v. Harris,* 403 U.S. 573, 582–83, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1970)). This "Robert," moreover, had not only been seen with Guerrero, but seen engaged in suspicious activities with him.

Monnolly also knew that a known accurate informant from an earlier successful investigation had stated that a "Dario" was transporting cocaine in kilogram quantities from Rochester to Cleveland on a daily basis. The similarity of information from two different sources enhances the probability that the information is true. *United States v. Feeney,* 984 F.2d 1053, 1056 (9th Cir.1993); *United States v. Laws,* 808 F.2d 92, 103–04 (D.C.Cir. 1986). Furthermore, the corroborated infor-

mation regarding "Dario" was not innocuous or accessible to the general public, but about highly secretive criminal activity.

During the investigatory stop, Monnolly was able to gather additional corroboration of the informant's tip. He was able to identify Padro from prior surveillance, as an associate of Guerrero, an association which has been held to be another factor in support of the government's contention that there was probable cause to search the vehicle. *United States v. Wright*, 577 F.2d at 380.

Finally, when Monnolly looked into the passenger compartment of the car, he noticed a panel in plain view in the rear of the car protruding precisely in the same location as the informant had predicted. *United States v. Bentley*, 29 F.3d 1073, 1076 (6th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 604, 130 L.Ed.2d 515 (1994). After seeing the protruding panel, and then the tiny hook attached to it, Monnolly had corroborated every facet of the informant's tip, except for the possession of the cocaine itself, which there were now numerous reasonable grounds for believing would most probably be found under the protruding panel. Such comprehensive corroboration of the detailed informant's tip requires this Court to conclude that Monnolly had probable cause to search the vehicle. *See Draper v. United States*, 358 U.S. 307, 314–15, 79 S.Ct. 329, 334, 3 L.Ed.2d 327 (1959); *United States v. Pasquarille*, 20 F.3d 682, 687 (6th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 481, 130 L.Ed.2d 394 (1994).

In reaching its conclusion that this search was unlawful, the district court distinguished *Pasquarille, supra,* concluding that the informant's tip in that case was more reliable, because the *Pasquarille* informant identified his occupation to police, and stated that he had personally observed Pasquarille attempting to sell drugs. *Pasquarille*, 20 F.3d at 687. The informant in this case, however, gave such detailed and accurate information about Defendant's plans and activities as to indicate an intimate knowledge of the operation at hand. This type of information increases the overall reliability of the tip, because it suggests that it came from someone close to the Defendant. *Gates*, 462 U.S. at 246, 103 S.Ct. at 2336. Moreover, police corroboration in this case was far more extensive than *Pasquarille*, in which the officers had no information about Pasquarille or his vehicle prior to the informant's tip. Here, Monnolly had prior surveillance information which corroborated the suggestion that the vehicle, Padro, and LeBron were all involved in drug trafficking.

In reversing the district court, we must emphasize the similarity between this case and *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The *Gates* Court held that police had established probable cause through comprehensive corroboration of a detailed tip provided by an anonymous informant, even though the informant had failed to state how he acquired the information. *Gates*, 462 U.S. at 245–46, 103 S.Ct. at 2335–36. The Court found that, under the totality of the circumstances analysis, "a deficiency in one [criterion] may be compensated for, in determining the overall reliability of a tip, by a strong showing ... [of] some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329. In applying the totality of the circumstances approach to this case, we conclude that the informant's tip, coupled with Monnolly's comprehensive corroboration of that information and the additional information which Monnolly had derived from independent sources, provided more than ample probable cause, particularly when the secret compartment with a latch hook in plain view gave final corroboration of all that had been alleged.

### III.

Because we conclude that there was probable cause to search the vehicle, we reverse the district court's order granting Defendant's motion to suppress, and remand for further proceedings.