103 F.3d 131
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Thomas FARMER, Defendant-Appellant.
 No. 95-6637.
 United States Court of Appeals, Sixth Circuit.
 Dec. 03, 1996.
 
 Before: CONTIE, SUHRHEINRICH and MOORE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Thomas Farmer, appeals his conviction and sentence for possession with intent to distribute cocaine base in violation of 18 U.S.C. § 841. For the following reasons, we affirm.
 
 I.
 
 2
 On April 21, 1995, Chris Neal of Maysville, Kentucky Police Department was on routine patrol in the area of East 4th Street at 1:25 p.m. Gregory Dudley stopped Officer Neal and informed him that three males sitting across the street were "dealing dope." Mr. Dudley said that he had seen one or two deals being made. Rhoda Holmes also approached Officer Neal and informed him that she had seen two deals being made and that the narcotics were hidden under a rock and a shrub nearby.
 
 
 3
 Officer Neal parked his car and approached the three men and a woman, who was sitting with them. Officer Neal advised them that he had received complaints about their activity and asked them to leave the area. They complied. Officer Neal then looked around the area where they had been seated. Under a small shrub, he found two baggies containing what appeared to be crack cocaine. After making this discovery, Officer Neal approached and arrested the three men.
 
 
 4
 Officer Neal returned to East 4th Street the next day to locate the woman, Mary Carol Henry, who had been sitting with the three men. When he found her, she told him that she had heard on the street that Officer Neal "didn't get all the crack and that there was some more at the Ramada Inn." Ms. Henry thought the cocaine was in Room 117 or Room 123. Officer Neal testified that he had known Ms. Henry all his life and that although he had never previously used her in a narcotics investigation, he had questioned her several times "because a lot of drug dealers stay at her house when they come to Maysville." Officer Neal testified that none of the information which Ms. Henry had ever given him had proved to be incorrect.
 
 
 5
 Officer Neal called the Ramada Inn to tell them not to let anyone into the room rented by Mr. Farmer, which was Room 123. He then went to the Ramada Inn and learned that Gregory Farmer had registered on Thursday, April 20th and paid for the room through April 22nd.[1] The desk clerk told Officer Neal that a female had asked for a key to Room 123 to get Mr. Farmer's belongings out of the room because Farmer was in the hospital. Also, someone identifying himself as Gregory Farmer had tried to wire money to the hotel to pay for the room for three more days.
 
 
 6
 On the evening of April 22, 1995, Officer Neal swore out an affidavit to obtain a search warrant for Room 123 at the Ramada Inn. The warrant was executed, and the police found a quantity of crack cocaine approximately the size of a fist in a tennis shoe.
 
 
 7
 Defendant Farmer was charged in a federal indictment with possession with intent to distribute approximately 150 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1).[2] Defendant filed a motion to suppress evidence and on June 13, 1995, the matter was heard before a magistrate, who issued a report and recommendation denying defendant's motion. On August 28, 1995, the district court entered an order adopting the magistrate's report and recommendation. On September 5, 1995, a trial began, and on September 6, 1995, the jury returned a verdict of guilty. On December 8, 1995, the district court sentenced defendant to a mandatory term of life imprisonment without the possibility of parole because of defendant's prior convictions. Defendant filed a timely notice of appeal on December 11, 1995.
 
 II.
 
 8
 We must first decide whether the district court erred in denying defendant's motion to suppress the cocaine found during the execution of the search warrant in Room 123 at the Ramada Inn. Defendant Farmer argues that Officer Neal lacked probable cause to conduct a search of the room.
 
 
 9
 Legal determinations made by a district court based upon its factual findings and conclusions of law are reviewed de novo. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993). A district court's denial of a motion to suppress evidence found during the execution of a search warrant will be affirmed on appeal if proper for any reason. Id. As long as a magistrate has a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Illinois v. Gates, 462 U.S. 213, 236 (1983).
 
 
 10
 In determining whether a search warrant is supported by probable cause, a magistrate must employ a flexible, totality of the circumstances standard. Id. at 233. A reviewing court, in turn, must merely "determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728 (1984). Here, we believe that the magistrate had a substantial basis for concluding that "a search would uncover evidence of wrongdoing." United States v. Leake, 998 F.2d 1359, 1363 (6th Cir.1993).
 
 
 11
 Officer Neal's affidavit, upon which the search warrant was based, read as follows:
 
 
 12
 The officer received a complaint that Gregory Farmer and other subjects were selling crack cocaine on E. 4th Street, Maysville, Kentucky. Upon searching the area complained of, this officer discovered a quantity of crack cocaine which a witness stated was in the possession of Gregory Farmer, who was then placed under arrest and a search of his person revealed $522 cash.
 
 
 13
 On April 22, 1995 at approximately 4 p.m., this officer received information from an anonymous witness who this officer has found to be reliable, that Gregory Farmer had rented the above-described premises and had stored in such room in excess of two ounces of crack cocaine.
 
 
 14
 Contacted the Ramada Inn and was advised that Gregory Farmer had rented the above room, that his room rental had expired, that Gregory Farmer called, or an individual claiming to be Gregory Farmer, the Ramada Inn and advised that money would be wired to rent the room through Wednesday, and a female subject came to the Ramada Inn and advised that Gregory Farmer was in the hospital and such subject attempted to gain entry into the room.
 
 
 15
 Defendant asserts that the affidavit does not establish probable cause because the only information Officer Neal had connecting defendant Farmer with the Ramada Inn was provided by informant, Mary Carol Henry, who was not a reliable source of information.
 
 
 16
 This argument ignores both the independent investigation Officer Neal made to corroborate the information given to him by Ms. Henry and the fact that Officer Neal saw Ms. Henry in the company of defendant Farmer immediately prior to his arrest. Probable cause does not require a certainty of criminal activity, but a "probability of substantial chance of criminal activity." Gates, 462 U.S. at 244 n. 13. This court in United States v. Padro, 52 F.3d 120, 124 (6th Cir.1995) found probable cause in a case in which an anonymous informant provided detailed information about a vehicle and two persons using it to transport cocaine into Ohio. In Padro, the officer who received the tip was able to corroborate several aspects of the tip by searching the title of the vehicle, and by organizing a surveillance team. Id. at 121-22. This court noted that the informant's tip alone would not have justified a finding of probable cause, because her anonymity and failure to state the basis of her knowledge undercut the reliability of the information she gave. Id. at 123. However, the efforts of the officer to corroborate the information given by the anonymous informant yielded evidence that the vehicle and the persons in it were involved in drug trafficking. Under the totality of the circumstances test articulated in United States v. Gates, this court found "more than ample probable cause" to support the search of the vehicle. Id. at 124.
 
 
 17
 Defendant argues that the present case is distinguishable from Padro because the information given by the informant in Padro was more detailed than the information Ms. Henry gave to Officer Neal. However, this distinction does not make a difference. Unlike the informant in Padro, Ms. Henry was known to Officer Neal, and he had questioned her in the past and found her information to be correct, indicating she was a reliable informant. In addition, he had seen her in the company of defendant Farmer while he was dealing cocaine immediately prior to his arrest. These two facts bolster the reliability of the information provided by Ms. Henry.
 
 
 18
 In addition, Officer Neal made efforts to corroborate the reliability of the information given him. Ms. Henry told Officer Neal that defendant Farmer had been staying at the Ramada Inn, in either Room 117 or 123, and that more crack cocaine would be found there. However, Officer Neal did not simply rely on this information, but before obtaining a search warrant, he went to the Ramada Inn and found:
 
 
 19
 1. Gregory Farmer (the name that defendant was using when arrested) had rented Room 123 at the Ramada Inn;
 
 
 20
 2. After defendant Farmer's arrest, a female tried to gain access to his possessions by telling hotel personnel that he had been hospitalized;
 
 
 21
 3. A male identifying himself as Gregory Farmer asked if he could wire money to pay for the room through the following Wednesday.
 
 
 22
 Because Officer Neal had arrested Farmer the day before for drug trafficking, he already knew that the person to whom the tip pertained was involved in drug trafficking. He found that as the informant had stated, defendant had rented Room 123 at the Ramada Inn, and that after defendant's arrest, someone had tried to gain access to the room through subterfuge. Another person, pretending to be Farmer, had tried to pay for further use of the room. All of these facts establish that in the totality of the circumstances, it was more likely than not that a search would uncover evidence of wrongdoing. United States v. Leake, 998 F.2d at 1363. For these reasons, the district court properly denied the motion to suppress the evidence seized from Room 123 of the Maysville Ramada Inn. The district court is affirmed on this issue.
 
 III.
 
 23
 We must next decide whether the district court erred when it sentenced defendant to a mandatory term of life imprisonment without the possibility of parole pursuant to 21 U.S.C. § 841(b)(1)(A).
 
 
 24
 Defendant argues that the statutory mandatory penalty of life imprisonment without release under 21 U.S.C. § 841(b)(1)(A) violates the due process and equal protection clauses, Article III, and the Eighth Amendment to the United States Constitution. He claims that by prohibiting the court from passing an individualized sentence, he was deprived of his rights under the due process clause and that by imposing mandatory sentences, the power of Article III judges has been unconstitutionally infringed upon by Congress. He contends that the law violates the equal protection clause because it imposes a much harsher sentence for those convicted of a crack cocaine offense, as opposed to a powder cocaine offense, and African Americans are more likely to deal with crack, rather than powder, cocaine. Finally he argues that the Eighth Amendment's prohibition against cruel and unusual punishment is violated by the statute because the seriousness of defendant's prior drug convictions cannot be considered.
 
 
 25
 Constitutional challenges to a sentence raise questions of law which are reviewed de novo. United States v. Smith, 73 F.3d 1414, 1417 (6th Cir.1996). The United States Supreme Court or this court have found that the first three of defendant's arguments have no merit. In Mistretta v. United States, 488 U.S. 361 (1989), the Supreme Court found that the Sentencing Reform Act was not an unconstitutional delegation of legislative authority and did not deprive the courts of their judiciary power. The Supreme Court found that depriving courts of unlimited discretion in sentencing does not violate principles of separation of powers. Id. at 396. As this court stated in United States v. Allen, 873 F.2d 963, 965 (6th Cir.1989), there is no constitutional right to individualized sentencing. The due process argument raised by defendant has been considered and rejected by the court in United States v. Harden, 37 F.3d 595, 601-03 (11th Cir.1994). In addition, this court has rejected challenges under the due process clause to the one hundred to one sentencing ratio because the ratio is rationally related to a legitimate government interest. United States v. Pickett, 941 F.2d 411, 418 (6th Cir.1991). This court has also rejected equal protection claims in this regard. United States v. Lloyd, 10 F.3d 1197, 1220 (6th Cir.1993), cert. denied, 114 S.Ct. 1569 (1994).
 
 
 26
 Defendant's final argument is that his extended sentence is disproportionate to the crimes he has committed. He cites Solem v. Helm, 463 U.S. 277 (1983) for the proposition that a proportionality analysis should be applied in cases where the sentence is extreme--life imprisonment without parole. This court has already found in a case similar to the present case that the mandatory life sentence without the possibility of parole under 21 U.S.C. 841(b)(1)(A) does not violate the Eighth Amendment because it was not disproportionate to the crimes committed. United States v. Hill, 30 F.3d 48, 50-51 (6th Cir.), cert. denied, 115 S.Ct. 350 (1994). Similarly, in the present case, defendant's sentence was not disproportionate to the crime committed. Defendant had two prior drug convictions of which prior notice was given to the court and to defendant. Defendant was convicted of an offense involving 150 grams of cocaine base, a large quantity of narcotics. Defendant's presentence report indicated that the convictions and incidents relied upon for imposing the mandatory life sentence were not isolated occurrences in defendant's life. Prior to the present offense, defendant had a total of seven prior criminal convictions, at least five of which were felonies. Because the circumstances underlying defendant's conviction and prior criminal activity are more egregious than those which justified the life sentence imposed in Hill, this court will sustain the sentencing order of the district court.
 
 
 27
 To conclude, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Gregory Farmer was the name defendant was using at the time
 
 
 [2]
 Two other counts of the indictment were eventually dismissed