**UNITED STATES of America,**
**Plaintiff,**

v.

**James A. KERCHUM, Defendant.**

**No. 4:99CR156.**

United States District Court,
N.D. Ohio.

Oct. 8, 1999.

Albert A. Palombaro, Boardman, OH, for Defendant.

Nancy Lee Kelley, Office of the U.S. Attorney, Cleveland, OH, for U.S.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court on the Motion of the Defendant James Kerchum ("Kerchum") to suppress the evidence (Dkt.# 49) found by the Girard Police in the search of his residence. For the following reasons, the Defendant's Motion to Suppress (Dkt.# 49) is hereby **DENIED.**

### FACTS

On April 23, 1999, Girard Police received a call of a burglary in progress at 36 Stambaugh Street which was the Kerchum residence. As Cheryl Kerchum arrived there with her daughter Tiffany, she observed a man pushing her basement door closed and then walking away from her home carrying items which she believed belonged to her. (Tr. at 28.) She telephoned "911" and gave the police dispatcher a description of the man and the direction he was taking. Mrs. Kerchum and her daughter followed the man and watched him as he entered Towne Center Beverage located in the Towne Center Plaza. The alleged burglar was apprehended by the Girard Police and he identified himself as Michael Visnich, a friend of the Defendant James Kerchum.[1]

Responding to the burglary call was Girard Police Captain Dominic Petrarca. After Michael Visnich was in custody, Captain Petrarca proceeded to 36 Stambaugh

---

1. Michael Visnich is also a co-defendant in this case.

Street. (Transcript of Suppression Hearing ("Transcript") at 4.) There he was met by Cheryl Kerchum, the Defendant's estranged wife, and their fifteen-year-old daughter Tiffany. (Tr. at 4.) Captain Petrarca was the only officer at the Kerchum residence at that time and was admitted upon the invitation of Mrs. Kerchum. (Tr. at 29.) Mrs. Kerchum apparently wanted to show Captain Petrarca what items from the home were taken in the burglary. (Tr. at 4–5, 29.)

Captain Petrarca testified that he had no specific knowledge of who was residing at 36 Stambaugh at the time, but knew that the Kerchum family lived there. (Tr. at 7.) Furthermore, Captain Petrarca did not know that Mrs. Kerchum was not residing at 36 Stambaugh on April 23, 1999.[2] (Tr. at 13, 23.) Most importantly, Captain Petrarca testified that he believed, based upon his knowledge of the family at the time, that Mrs. Kerchum had authority to allow him into the home.[3] (Tr. at 23.)

While Captain Petrarca was in the home, he observed firearms, including homemade weapons, in plain view. (Tr. at 5.) Upon further investigation, Captain Petrarca observed what he believed to be materials for making pipe bombs or similar explosive devices in the basement workshop area.[4] (Tr. at 5–6, 22.) Captain Petrarca, concerned for the safety of the Kerchum family and the other officers that had arrived at the scene, ordered everyone out of the house and contacted Captain Frank Bigowski of the Girard Police De-

tective Bureau. Captain Bigowski then called for the Youngstown Police Department's Bomb Squad. (Tr. at 6.) Because the Youngstown Bomb Squad was unavailable, the Bureau of Alcohol, Tobacco and Firearms ("BATF") was notified and Agent McAlister was dispatched to the scene. (Tr. at 6.)

After everyone was evacuated, Officer Petrarca believed that a search warrant was required to re-enter the house to secure it and ensure the stability of the potentially explosive material he observed. (Tr. at 6, 22.) Captain Petrarca testified that he believed that the firearms and bomb-making material served as the basis for the warrant. (Tr. at 17.) However, it was Captain Bigowski who actually obtained the warrant. (Tr. at 22.)

## FOURTH AMENDMENT

■ The Fourth Amendment states,

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The controlling standard of the Fourth Amendment is reasonableness. It is axiomatic that a non-consensual search, by the police, of private property, is *per se* unreasonable unless it has been authorized by a

2. Captain Petrarca testified that he knew there were domestic problems at the Kerchum residence, but did not know who actually had possession of the home at the time of the burglary call. (Tr. at 7.) Additionally, Captain Petrarca testified that although he knew there was a prior restraining order against Mrs. Kerchum, he did not know whether one was in effect on April 23, 1999. (Tr. at 13.) Captain Petrarca further stated that there was no time to check whether Mrs. Kerchum was permitted in the home. (Tr. at 14.) Captain Petrarca, however, did know that it was Cheryl Kerchum who telephoned the police to report that her home had been burglarized. (Tr. at 7.)

3. It also appears that Mrs. Kerchum believed that she was authorized to be at 36 Stambaugh pursuant to the order she obtained in Girard Municipal Court (Government's Suppression Hearing Exhibit 3) on the same day as the events at issue in this case. (Tr. at 30–32.)

4. Captain Petrarca testified that he observed homemade weapons, gun powder, pipes, and end caps that were drilled such that they could be used as explosive devices.

valid search warrant. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). More specifically, the Fourth Amendment "generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Voluntary consent, however, is one of the exceptions to the warrant requirement.

*Consent to Search the Kerchum Residence*

■ The police may enter a home, without a warrant, either with the voluntary consent of the individual whose property is searched or from a third party with common authority over the premises. *See Rodriguez*, 497 U.S. at 181, 110 S.Ct. 2793. In the absence of voluntary consent to search a residence by a third person with actual authority, the Government can show that a third person with apparent authority consented to the search. The Court in *Rodriguez* held that the whether the police had a basis for their belief that authority to consent existed "is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." *Rodriguez*, 497 U.S. at 186, 110 S.Ct. 2793. The Court further held that where police officers reasonably, though mistakenly, believe that a third party has authority to consent to the search of a residence, their entry without a warrant is not unreasonable under the Fourth Amendment. *See Id.* The issue, therefore, is "not whether the right to be free from searches has been waived, but whether the right to be free of unreasonable searches has been violated." *Id.* at 187, 110 S.Ct. 2793. An analysis of the events of April 23, 1999, must be undertaken to determine whether the police acted reasonably in accepting Mrs. Kerchum's consent as valid.

■ Captain Petrarca was the first Girard Police officer at 36 Stambaugh, the scene of the alleged burglary. When he arrived, Mrs. Kerchum and Tiffany were waiting there for him and Mrs. Kerchum asked Captain Petrarca to enter the home. Mrs. Kerchum asked Captain Petrarca to go with her to determine what property of hers might have been taken from the home in the burglary. Captain Petrarca knew that the Kerchums lived at 36 Stambaugh and that they had experienced domestic problems in the past. Additionally, Captain Petrarca knew that at some prior time there was a restraining order that prohibited Mrs. Kerchum from being at the Stambaugh address. (Tr. at 13.) However, Captain Petrarca did not know that any such restraining order was in effect on April 23, 1999. (Tr. at 14.) Notwithstanding that Captain Petrarca knew of the prior court order prohibiting her from residing at 36 Stambaugh, based upon the information available to him at the time, he reasonably believed that Cheryl Kerchum had authority to consent to the search of her home.[5] As such, the Defendant's Fourth Amendment right to be free from unreasonable searches and seizures was not violated.

*Plain View*

■ Captain Petrarca was lawfully present inside the Kerchum residence,

---

5. The Supreme Court in *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), recognized that,

> Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistake on their part. But the mistakes must be those of reasonable men, acting on facts leading to their conclusions of probability.

*Id.* at 176, 69 S.Ct. 1302. Assuming arguendo that Captain Petrarca was mistaken about Mrs. Kerchum's authority to enter the house, it was reasonable under the circumstances for him to enter the house to determine what was taken. This Court expresses no opinion as to the effect of the Girard Municipal Court order giving Mrs. Kerchum possession of the home. Rather, the Court relies upon the fact that Captain Petrarca reasonably believed, although he was quite possibly mistaken, that Cheryl Kerchum was in lawful possession of 36 Stambaugh such that she could consent to his entry.

and, once there, observed firearms and bomb-making materials. For the police to conduct a valid plain view search, two requirements must be met: "(1) the incriminating nature of the item in plain view must be 'immediately apparent,' and (2) the officer must be lawfully located in a position from which he or she can plainly see the item and have lawful access to it." *United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir.1996) (*citing Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). *See United States v. Riascos–Suarez*, 73 F.3d 616, 625 (6th Cir.1996) ("A search and seizure is valid if an officer sees an incriminating object while lawfully standing in an area from which the object is plainly visible.") *See also United States v. Walker*, 181 F.3d 774, 779 (6th Cir.1999) ("The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment.")

■ The above facts establish Captain Petrarca's lawful presence in the Kerchum residence. Additionally, Captain Petrarca could have seized any obviously incriminating object without a search warrant after he was lawfully present. *See United States v. Reed*, 141 F.3d 644, 649 (6th Cir.1998). Before any items could be seized, however, Captain Petrarca ordered the house to be cleared pending the bomb squad's arrival. Captain Petrarca's search of the Kerchum residence was a valid plain view search and was therefore reasonable under the Fourth Amendment.

*Probable Cause Supporting A Search Warrant*

■ The bomb-making material observed by Captain Petrarca provided the

probable cause necessary to secure a warrant to re-enter and search the Kerchum residence.[6] The Sixth Circuit in *United States v. Padro*, 52 F.3d 120 (1995), held that "Probable cause has been defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *Id.* at 122–23 (*citing United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)). Furthermore, the court stated that the test for probable cause is "whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 123 (*citing Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).) Finally, the Sixth Circuit explained that "Determinations of probable cause are based on a review of the 'totality-of-the-circumstances,' and involve a practical, common sense review of the facts available to the officer at the time of the search." *Id.* (*citing Gates*, 462 U.S. at 230, 103 S.Ct. 2317; *see United States v. Sims*, 975 F.2d 1225, 1238 (6th Cir.1992), *cert. denied*, 507 U.S. 932, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993); *see also United States v. Nigro*, 727 F.2d 100, 103 (6th Cir.1984)).

■ In determining whether probable cause exists, the Sixth Circuit has additionally explained that,

The Fourth Amendment necessitates an inquiry into probabilities, not certainty. There is no precise formula for determining the existence or nonexistence of probable cause; to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur.

*United States v. Strickland*, 144 F.3d 412, 415 (6th Cir.1998) (citations omitted). Police officers must, therefore, "be able to

---

6. When Captain Petrarca observed the bomb-making materials in plain view, probable cause existed supporting a warrantless seizure of the contraband. Rather than risk injury to those at the scene, however, Captain Petrarca evacuated the Kerchum residence, radioed for the bomb squad, and received word from Captain Bigowski that a warrant would be obtained before the police re-entered the home.

articulate concrete facts from which they infer a probability that illegality has occurred.... [and] while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial." *Id.* at 415–16.

Captain Petrarca's observation of what appeared to be bomb-making materials in the basement of the Kerchum residence was sufficient evidence to support a warrant being issued. Once the police left the Kerchum residence to await assistance from the bomb squad and BATF, they acted reasonably in obtaining a warrant to re-enter the Kerchum residence. The Girard Police, therefore, did not run afoul of the Fourth Amendment when they applied for a warrant based upon what Captain Petrarca observed in plain view while lawfully present in the Kerchum residence. The entry of the Girard Police and Agent McAlister into the Kerchum residence after the warrant was obtained based upon probable cause was reasonable under the Fourth Amendment.

## CONCLUSION

In summary, Captain Petrarca was admitted to the Kerchum residence by Cheryl Kerchum who he reasonably believed possessed the authority to grant him access. Once inside the residence, Captain Petrarca observed bomb-making materials and other weapons and firearms in plain view. The contraband viewed by Captain Petrarca created probable cause to obtain a search warrant. The warrant obtained by Captain Bigowski based upon the information relayed to him from the scene was, therefore, lawfully issued.

Accordingly, the Defendant's Motion to Suppress (Dkt.# 49) is hereby **DENIED.**

**IT IS SO ORDERED.**