**UNITED STATES of America**

v.

**Jerry Glenn POPE**

No. 1:04–00005.

United States District Court,
M.D. Tennessee,
Columbia Division.

July 29, 2004.

William Jordan Steed, III, Federal Public Defender's Office, Nashville, TN, for Jerry Glenn Pope (1), deft.

Jimmie Lynn Ramsaur, Office of the United States Attorney, Nashville, TN, for U.S. Attorneys.

## MEMORANDUM

HIGGINS, District Judge.

This matter is before the Court on the defendant's motion (filed June 25, 2004; Docket Entry No. 32) to suppress evidence seized in the execution of a search warrant for his person and two residences,[1] and the government's response. (Filed July 9, 2004; Docket Entry No. 37). Although this matter was originally set for an evidentiary hearing (Docket Entries No. 34, 35), the defendant withdrew his request for such a hearing (motion filed July 7, 2004; Docket Entry No. 36, 38) and has specifically requested that the motion be decided based on the evidence in the record. The Court's findings are as follows.

### I.

■ As an initial matter, the Court notes that all parties expressed agreement at the July 9, 2004 hearing on this matter that the question of whether probable cause existed to support the search warrants should be decided by reference solely to the warrants and affidavit[2] themselves. While the defendant questions the credibility of the confidential informant, he has not made any allegations of official fabrication that would warrant looking beyond the documents themselves. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (a defendant may challenge probable cause with evidence outside the affidavit by making a

---

1. 817 Moccasin Creek Road, Waynesboro, Tennessee, and 1130 Pope Circle Road, Waynesboro, Tennessee.

2. The same affidavit was submitted in support of all three warrants.

substantial showing that the affidavit contains deliberate falsehoods or reckless disregard for the truth, without which the affidavit would be an insufficient basis for the warrant). Accordingly, while the defendant has submitted the transcript (filed May 6, 2004; Docket Entry No. 21) of his preliminary detention hearing, the court has not relied upon that material in reaching its decision.[3]

The affidavit, sworn to by ATF special agent Wayne Kilday, contains the following relevant assertions of fact: that Jerry Pope was convicted of a felony in the Criminal Court of Wayne County, Tennessee, in 1998 (see Attachment A to Docket Entry No. 15, ¶ 2); that on January 22, 2004, a confidential informant (hereinafter "CI") who had proven reliable in previous work for law enforcement, in cooperation with authorities, wore a transmitting device and a tape recorder when the "CI" entered a trailer residence used by Mr. Pope at 817 Moccasin Creek Road in Waynesboro (¶ 3(A)); that the CI was allowed into the trailer where s/he purchased methamphetamine and whiskey from Mr. Pope, who during the encounter pointed a pistol at the CI and remarked "did I ask you if you wanted to die or not?" (¶ 3(B)); that upon further questioning on March 2, 2004, the CI stated that s/he had purchased methamphetamine from Mr. Pope at the Moccasin Creek location fifteen to twenty times between September and December 2003, and that on almost every occasion Mr. Pope was in possession of what appeared to be the same pistol displayed on January 22, 2004 (¶ 3(D)); that Mr. Pope also utilized and paid utilities for a second nearby residence at 1130 Pope Circle Road, where a vehicle registered to him at that address was seen on March 2, 2004, and that a local law en-

forcement officer and the CI state that he frequently goes to and from both residences (¶ 3(E–G)); that in Agent Kilday's over fourteen years of experience in investigating firearms cases he has found that people who own firearms tend to keep them on their persons and in their residences and vehicles for long periods of time. (¶¶ 1, 3(H)).

## II.

 The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A person's home or person may be searched pursuant to a warrant, however, where there is probable cause to believe that the search will reveal evidence that a crime has been committed. "Probable cause has been defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir.1995) (citation omitted). It exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

"[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 235, 103 S.Ct. 2317 (quoting *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). A reviewing court should "accord[ ] 'great deference' to a magistrate's determination"

---

**3.** Although defense counsel maintained that the Court could appropriately consider the transcript in the course of determining wheth-

er to apply the good faith exception to suppression of evidence, the Court has found it unnecessary to do so.

that probable cause exists to issue a search warrant. *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citation omitted). "That determination should not be set aside unless arbitrarily exercised." *United States v. Swihart,* 554 F.2d 264, 270 (6th Cir.1977). The test that a court applies in deciding whether an affidavit offered in support of a search warrant provided the requisite probable cause to sustain the warrant is the "totality of the circumstances":

> Although we must avoid simply "rubber stamping" the conclusions of the magistrate judge, we should equally avoid engaging in a hypertechnical, line-by-line critique of an affidavit. We should instead conduct a common sense review of the affidavit and ask if the issuing magistrate, using a "practical" and "common-sense" analysis, correctly determined under "all the circumstances set forth in the affidavit," that "there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*United States v. Mick,* 263 F.3d 553, 564 (6th Cir.2001) (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. 2317).

### III.

 Mr. Pope asserts that the information provided by the confidential informant was not sufficiently reliable to support a finding of probable cause. In determining whether a tip by an informant establishes probable cause for the issuance of a search warrant, a court must look at the totality of the circumstances. *United States v. Smith,* 182 F.3d 473, 477 (6th Cir.1999). In doing so, a court is to consider the veracity, reliability and basis of knowledge of the informant, as those terms have been defined:

> "Veracity" involves the credibility of the informant or, alternatively, the reliability of the informant's report. An affida-

vit thus must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable. "Basis of knowledge" refers to the particular means by which an informant obtained his information. There must be sufficient indication of the underlying circumstances from which an informant could reasonably conclude illegal activity is afoot. In assessing an informant's "basis of knowledge," the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements. An explicit and detailed description of the alleged wrongdoing allows a magistrate to "reasonably infer that the informant had gained his information in a reliable way."

*Id.* (citations omitted).

Between 1969 and 1983, veracity/reliability and basis of knowledge were often interpreted as absolute requirements in affidavits to sustain a probable cause determination based on informant tips, by courts construing the Supreme Court opinions in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In 1983, however, the Supreme Court clarified that while these factors should be considered, they are not discrete and inviolable requirements for probable cause:

> We agree ... that an informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case, .... Rather, ... they should be understood simply as closely intertwined issues that may usefully illuminate the common-

sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Gates,* 462 U.S. at 230, 103 S.Ct. 2317. The Court went on to make clear that "a deficiency in one [of the above factors] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability," and that the proper test "permits a balanced assessment of the relative weights of all the various indicia of reliability" apparent in the affidavit. *Id.* at 233, 234, 103 S.Ct. 2317.

Agent Kilday's affidavit in this case makes clear that the confidential informant upon whom he relied had been used previously by the local chief of police and by another ATF agent, and had a proven track record of purchasing drugs from three different individuals in cooperation with law enforcement. (¶ 3(A)). The informant had accordingly proven reliable through past cooperation. Interestingly, the defendant asserts that this very track record—the informant's record of controlled buys, among other drug purchases—indicates that the CI is a "regular" to drug dealers and thus not likely to be credible. The Court finds this assertion to be without merit and wonders who, if not someone familiar with and unlikely to be suspected by those in the drug trade, the defendant would have authorities utilize in their investigations. It is unlikely that the purposes of an investigation would be served by sending a law-abiding, upstanding stranger alone to the door of a suspected criminal, and embedding undercover law enforcement agents in criminal enterprises is too difficult and time-consuming to be relied upon extensively; thus reliance on individuals associated with criminal activity is a common and necessary reality of police work. Indeed, as the Sixth Circuit has recognized, "it is often people involved in criminal activities themselves that have the most knowledge about other criminal activities." *United States v. Martin,* 920 F.2d 393, 398–99 (6th Cir. 1990).

Moreover, in this case the informant's account of having been threatened with a pistol by Mr. Pope was corroborated by the clandestine tape of that encounter. The exchange "I don't want that" and "did I ask you if you wanted to die or not" between the informant and Mr. Pope clearly supports the likelihood that Mr. Pope was menacing the CI with a lethal weapon just as s/he described.

The defendant also questions the motives underlying the CI's subsequent admission to having purchased methamphetamine previously from Mr. Pope. The Court does not share the defendant's concern. As the Supreme Court intimated in *Gates,* a tip that has the potential to subject the informant to criminal liability is not terribly likely to be fabricated. *See Gates,* 462 U.S. at 233–34, 103 S.Ct. 2317. "[P]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility." *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Defense counsel argued at the hearing in this matter that in light of the informant's history of uncontrolled drug purchases, perhaps the informant was himself or herself under investigation and was providing this additional information in an effort to benefit the CI's situation, and that it was accordingly not really against the CI's legal interest as anticipated in *Gates* and *Harris.* Even were such suspicions to prove true, they do little to undermine the informant's proven reliability and the corroboration in this case. As discussed above, criminals are regularly the best source for information

about criminal activity, and the test for probable cause is not the informant's altruism but the reliability of his information. As the Ninth Circuit has explained:

> It would have to be a very naive magistrate who would suppose that a confidential informant would drop in off the street with such detailed evidence and not have an ulterior motive. The magistrate would naturally have assumed that the informant was not a disinterested citizen. While the magistrate was not informed of the informant's probity, the magistrate was given reason to think the informant knew a good deal about what was going on at [the residence].

*United States v. Strifler,* 851 F.2d 1197, 1201 (9th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989) (*quoted in Martin* at 399).

Finally, the defendant appears to argue that because the CI's track record dealt with narcotics, s/he could not be considered reliable support for a warrant to search for weapons. The Court finds this distinction insignificant. There is no reason to expect that an informant who had reliably conveyed drug trade information would lie about observing a weapon, and no particular expertise is required to recognize and report that a pistol has been pointed in one's direction.

The Court concludes that the totality of the circumstances surrounding the informant's tip, and the specific information contained in that tip, bear sufficient indicia of the reliability of that information to support the magistrate judge's finding of probable cause.

## IV.

Defendant Pope also contends that the affidavit upon which all three of the warrants at issue were based does not contain sufficiently contemporaneously information for the issuing magistrate judge to find probable cause. In other words, he maintains that the information in the affidavit was too stale to support a probable cause finding.

Because probable cause must be based on a fair probability that evidence will be found in the search, it must necessarily be supported by facts bearing on "a presently existing condition." *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998) (quoting W. LaFave, Search and Seizure § 3.7 at 338 (3d ed.1996)). Whether information about previously observed conduct is still timely or has grown too stale to support a finding of probable cause is to be determined on a case-by-case basis, considering the amount of time elapsed, "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), etc." *Id.* (quoting *Andresen v. State,* 24 Md.App. 128, 331 A.2d 78, 106 (1975)).

In this case, approximately six weeks passed between the controlled buy on January 22 and the application for the search warrants on March 5.[4] Evidence of criminal activity even older than that can support a finding of probable cause when the criminal activity is a continuing enterprise and the evidence sought is of the type likely to be maintained. *United States v. Word,* 806 F.2d 658, 662 (6th Cir.1986) (affirming finding of probable cause for warrant issued on May 28, 1985, where affidavit indicated the latest illegal sale of prescriptions was in January and

---

**4.** Agent Kilday only learned of the controlled buy and other information regarding Mr. Pope within two weeks of applying for the warrants. (See Attachment A to Docket Entry No. 15, ¶ 2).

latest inspection to reveal additional prescriptions for Dilaudid written by the defendant was April 9; facts set forth in the affidavit spanned from June 18, 1984 through April 1985).

The defendant relies heavily on a decision by the Colorado Supreme Court to the effect that two instances of drug manufacturing at the defendant's residence, four months and one month prior to the warrant application, were too stale to support a finding of probable cause. *See People v. Miller*, 75 P.3d 1108 (Colo.2003), *cert. denied* (June 1, 2004). The present case, however, does not hinge on two isolated occurrences separated by several months; rather, Agent Kilday's affidavit asserts that between September 2003 and January 2004, the confidential informant saw Mr. Pope in possession of a pistol on almost every one of the sixteen to twenty-one occasions s/he saw him at the Moccasin Creek trailer. These facts indicate continuous, regular activity over the course of several months and put this case more in line with *Word* than with *Miller*.

Moreover, a weapon is an object of "enduring utility to its holder," as opposed to drugs or other items that are intended to be consumed, sold or otherwise disposed of, and Mr. Pope's weapon was repeatedly observed in his possession at a "secure operational base" under his control. Accordingly, it was proper to conclude that this weapon or others would likely still be found either at the Moccasin Creek residence or on Mr. Pope's person at the time the warrants were issued, and thus that the information in the warrant was sufficiently contemporaneous to support probable cause.

V.

■■■■ In addition to requiring that the facts be sufficiently timely to support a belief that the evidence sought still exists at the *time* of a search, probable cause also requires a reasonable belief that the evidence sought will be found at the *location* of the search; in other words, there must be a nexus established between the items sought and the place to be searched. *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir.1998). In this case every instance of illegal activity referenced in the affidavit took place at the defendant's Moccasin Creek trailer. The only information provided about the Pope Circle residence is that the utilities are under the defendant's name, he comes and goes from that residence in addition to the Moccasin Creek trailer, and a vehicle is registered to him at that address.

The government would have the Court conclude, based upon the apparent fact that the defendant somehow utilized the Pope Circle residence, and Agent Kilday's experience that people who own firearms tend to keep them in their residences, that there was sufficient nexus between the Pope Circle residence and the firearm possession observed at the Moccasin Creek trailer. With due regard for Agent Kilday's experience, an officer's training and experience alone are no substitute for the required evidentiary nexus between criminal activity and the place to be searched. *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir.1994). Although the Court has no difficulty accepting that gun owners typically keep guns in their homes, that truism is of little benefit when faced with multiple addresses. In fact, where *all* evidence points to the conclusion that the defendant was operating a criminal enterprise involving a firearm at single residence, it would be unreasonable to presume that evidence would also be found at any or all other locations connected to or even owned by the defendant. The only connection between Mr. Pope's criminal activity at Moccasin Creek and his Pope Circle property is the natural suspicion that criminals may maintain evidence of

their crimes anywhere they spend time, a suspicion that has been held insufficient by the Sixth Circuit:

> Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the [safe deposit] boxes, and therefore the first warrant should not have been issued. To find otherwise would be to invite general warrants authorizing searches of *any* property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose.

*Schultz* at 1097–98 (emphasis in original).

 The Court does not suggest that multiple residences will always be immune to search. But for information about a criminal venture in one residence to justify a search of another residence, there must be some additional reason to suggest that evidence is likely to be transported between the two, such as that found by the United States District Court for the Eastern District of Louisiana:

> The affidavit clearly establishes that crack cocaine was being sold from Brown's St. Mary Street apartment. Further, the affidavit suggests that drugs could not be purchased at Apartment C when Brown was not present. In addition, Officer Lewis explained that while Brown rented Apartment C, she was not residing there. Brown continuously returned to 2723 Allen Street, her permanent residence.

*United States v. Williams–Brown,* 1997 WL 675327 at * 6 (E.D.La. Oct.28, 1997). Under those circumstances, the *Williams–Brown* court concluded that it was reasonable to believe that the suspect would carry contraband from the apartment to her permanent residence in order to keep it

secure, and that it would likely be found there.

At the very least, probable cause requires that there be *something* about the second residence to indicate that it is also involved in criminal operations known to be on-going elsewhere, such as barred windows and doors commonly used by drug dealers to protect drugs and money, and an officer's experience that drug dealers often keep drugs at a secondary location. *See United States v. Carter,* 64 Fed.Appx. 109, 112–13 (10th Cir.2003) (finding probable cause to search second residence after a small amount of cocaine was discovered in previous search of·one residence of suspected drug dealer).

In contrast, the affidavit in the present case does not establish which location was Mr. Pope's permanent or regular residence,[5] or that no firearm was present at the Moccasin Creek trailer when he was not there, or otherwise indicate that it was likely for him to transport or maintain firearms at the Pope Circle residence when they could just as well remain at Moccasin Creek. Consequently, the Court must conclude that the warrant to search the Pope Circle residence was issued without probable cause.

### VI.

 This finding alone does not result in exclusion of the evidence seized from the Pope Circle address, however. Evidence seized pursuant to a warrant issued without probable cause may still be admissible under the "good faith" exception to the exclusionary rule when officers acted in reasonable, good-faith reliance on the warrant. *United States v. Leon,* 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677. The government may not rely on the

---

**5.** Even if the Court had considered the detention hearing testimony, the third-hand information Agent Kilday omitted from his affidavit did not make clear how much time Mr. Pope spent at each location. (See Docket Entry No. 21, p. 17 l.7—p.18 l.10).

good faith exception where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405.

In *Schultz,* the Sixth Circuit found that although the officer's training and experience about where evidence might be found could not alone establish a nexus for probable cause, "the connection was not so remote as to trip on the 'so lacking' hurdle," and that the good faith exception accordingly applied to the evidence seized. *Id.* at 1098. That case, however, dealt with the search of bank safe deposit boxes, not a defendant's residence. Courts have long recognized that residential searches are on a different footing from other types of searches: "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961).

Even cases where the Sixth Circuit has applied the good faith exception to admit evidence seized from a second residence are distinguishable from this case. In 1995, for example, the Sixth Circuit applied *Leon* to reverse the district court's suppression of evidence where there was no probable cause nexus to search a second residence connected to a suspect. *United States v. Richardson,* 1995 WL 408065 (6th Cir. July 10, 1995). But in that case the court noted that the warrant for the second residence was issued only *after* a search of the trailer in which evidence indicated marijuana was being grown revealed a large marijuana growing operation and signs of the defendant's involvement in that operation, but none of the packaging materials, customer records or other items that must necessarily exist as part of the criminal operation. *Id.* at *3. Under those circumstances, the officer's reliance on the warrant was objectively reasonable. *Id.* No similar "missing evidence" theory applies in this case, as the Moccasin Creek trailer had not been searched before the Pope Circle warrant was issued.

In 1998, *United States v. Van Shutters,* 163 F.3d 331 (6th Cir.1998), involved the search of a defendant's residence in Tennessee after the search of his cousin's house in Georgia, where he was temporarily staying, confirmed the defendant's long-term on-going fraud and counterfeiting operation. The government conceded that there was no nexus to support the Tennessee warrant, but asserted, and the court agreed, that the warrant was executed in good faith. *Id.* at 337–38. It was objectively reasonable for the Tennessee authorities in that case to conclude that evidence of such an on-going criminal scheme conducted by the defendant would as likely be found in his home as in his cousin's home.

One year later the Sixth Circuit again applied the good faith exception to admit evidence seized from the search of a second dwelling in *United States v. Watkins,* 179 F.3d 489 (6th Cir.1999). In that case there was nothing in the affidavit to indicate that any illegal activity was taking place in the second house or on any part of the property other than the primary house in which the defendant lived, except for the affiant's statement that "his training and experience led him to believe that evidence of such activity would likely be found in other structures on the property that were also under the control of [the suspect]." *Id.* at 499. The court found that this nebulous connection was sufficient to satisfy the good faith exception, although not probable cause. It was significant in that case that the uninhabited dwelling was on the same property as the main house at which criminal activity had

been observed. As Judge Boggs's concurrence in the court's 2–1 decision points out, "cases in this circuit and elsewhere clearly hold that a warrant for the search of a specified residence or premises authorizes the search of auxiliary and outbuildings within the curtilage," and under such circumstances a separate probable cause finding is not even required for the second dwelling. *Id.* at 505. Without this connection to the main residence, absent in the current case, the facts in *Watkins* may well have resulted in suppression of the evidence.

In this case, Agent Kilday's information about Mr. Pope's continuing criminal activity related exclusively to the Moccasin Creek property. Although the Pope Circle property was also apparently under Mr. Pope's control, the suspicion that he might have contraband at that property was not buttressed by any other information known to the authorities: it was not on the same parcel of land as the Moccasin Creek trailer; it was not established that no contraband could be found at Moccasin Creek when Mr. Pope was not there; there were no sightings of Mr. Pope transporting anything between the two properties; it was not apparent that Mr. Pope would need to transport contraband from Moccasin Creek to Pope Circle to keep it secure; Agent Kilday had no prior knowledge of "missing evidence" of an obvious criminal enterprise from the Moccasin Creek property; and there were no other indicia about the Pope Circle property to connote criminal activity there.

In short, this is the classic case referenced in *Schultz* of authorities seeking to search "*any* property owned, rented, or otherwise used by a criminal suspect" in clear violation of the Fourth Amendment. *Id.* at 1098. In light of the Sixth Circuit's repeated announcements over at least the past nine years that searches of second or additional dwellings without specific evidentiary nexus are lacking in probable cause, this Court must conclude that for a federal law enforcement officer in 2004 to believe otherwise under the circumstances presented here was unreasonable. A reasonably prudent officer would have realized that some additional investigation into activities at the Pope Circle address was necessary in order to connect it to Mr. Pope's apparent criminal behavior. Accordingly, the *Leon* good faith exception does not apply to these facts, and the evidence seized from 1130 Pope Circle Road must be suppressed.

## CONCLUSION

Based upon the foregoing, the defendant's motion to suppress shall be granted with respect to the evidence seized from 1130 Pope Circle Road, Waynesboro, Tennessee, and denied in all other respects.

An appropriate order shall enter.

## ORDER

In accordance with the contemporaneously entered memorandum, the defendant's motion (filed June 25, 2004; Docket Entry No. 32) to suppress is granted in part and denied in part. The motion is granted with respect to any and all evidence seized from 1130 Pope Circle Road, Waynesboro, Tennessee, which is hereby suppressed, and is denied in all other respects.

It is so ORDERED.