Jermaine E. WILLIAMS, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2002–SC–0445–DG.

Supreme Court of Kentucky.

Aug. 26, 2004.

Rehearing Denied Nov. 18, 2004.

Elizabeth B. McMahon, Daniel T. Goyette, Louisville, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Brian T. Judy, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

GRAVES, Justice.

## I. FACTS AND PROCEDURAL HISTORY.

On August 6, 1998, Detective James Thomas received a tip from a proven reliable confidential informant concerning drug trafficking. Specifically, the informant stated that a black male named Jermaine would be driving a blue El Camino with gray primer spots, and that he would be picking up another black male named Jason Burdette at a designated apartment complex in Jefferson County. According to the informant, Jermaine was a known drug trafficker, and he would be carrying a large quantity of crack cocaine in his buttocks.

Based on this information, but acting without a search warrant, Detective Thomas and other detectives set up a surveillance of Burdette's apartment building. The officers observed a black male, subsequently identified as Appellant, approach in a blue El Camino with gray primer spots. When officers surrounded the vehicle, Appellant consented to a search of his car. No contraband was found in the car.

Appellant was then handcuffed and taken into Burdette's apartment. Inside, when questioned, Appellant denied having any drugs or weapons on his person. The officers informed Appellant that they had received a tip that he was hiding drugs in his buttocks. The officers thereafter took Appellant into a bathroom and conducted a body search, which revealed a plastic bag containing crack cocaine.

Appellant was subsequently indicted for first-degree trafficking in a controlled substance and for being a second-degree persistent felony offender. The trial court denied Appellant's motion to suppress the evidence obtained as a result of the search and seizure. Following a trial, the jury found Appellant guilty of both charges.

The recommended ten year sentence was enhanced to twelve years due to Appellant's status as a persistent felony offender.

The Court of Appeals affirmed the conviction. Discretionary review was granted by this Court. We affirm, and now hold that a corroborated tip from a known, reliable informant concerning the possession of cocaine and drug trafficking may provide probable cause for an arrest and search.

## II. REASONABLE SUSPICION FOR AN INVESTIGATORY STOP AND PROBABLE CAUSE FOR AN ARREST AND SEARCH.

Appellant first argues that police officers lacked the reasonable suspicion necessary to justify a warrantless stop. He contends that his actions alone, i.e., driving his car to an apartment building, do not meet the stringent requirements set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to justify a warrantless stop. It is Appellant's position that the stop was based solely upon information obtained from the informant, which Appellant argues lacked a sufficient indicia of reliability to support the warrantless stop.

Both the Fourth Amendment to the United States Constitution and Section Ten of the Kentucky Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This prohibition on unreasonable searches and seizures ordinarily requires all such encounters to be conducted pursuant to a judicially-issued warrant—that is, the criterion by which the reasonableness of a given search or seizure typically is measured is whether it was authorized by a warrant.

In *Terry, supra,* the United States Supreme Court carved out a limited exception to the warrant requirement, permitting brief investigatory stops in circumstances where police officers have a reasonable articulable suspicion that "criminal activity may be afoot." *Id.* at 30, 88 S.Ct. at 1884. Such encounters-"Terry stops," as they have come to be known—need not proceed pursuant to a warrant, nor must they be supported by probable cause. "The officer need not be absolutely certain that the individual" is engaged in an unlawful enterprise; "the issue is whether a reasonably prudent man in the circumstances would be warranted in his belief" that the suspect is breaking, or is about to break, the law. *Id.* at 27, 88 S.Ct. at 1868.

As the Supreme Court recently explained, reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 675–76, 145 L.Ed.2d 570 (2000). The Court's decision in *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), offers a helpful analysis of the quantum of proof needed to justify a *Terry* stop. In *White,* a police officer received a telephone call from an anonymous person, stating that one Vanessa White would be leaving a particular address at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case. The officer and his partner proceeded to the address specified, where they observed a brown Plymouth station wagon with a broken right taillight in front of the building. The officers observed White leave the building, carrying nothing in her hands, and enter the station wagon. They followed the vehicle as it drove the most direct route to Dobey's Motel. Police stopped the vehicle just short of the motel. Following the stop, White gave the officers permission to search the car. The officers discovered a brown attaché case and, upon request, White gave the officers the combination to the lock. The officers discovered marijuana in the attaché case and arrested White. During processing at the police station, an officer also found cocaine in White's purse. *Id.* at 325–29, 110 S.Ct. at 2412–16.

In holding that the stop was justified, the Court noted that "reasonable suspicion" is less than probable cause, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content from that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Id.* at 329, 110 S.Ct. at 2416.

In *White,* although not every detail provided by the informant was verified or even correct, the Court noted that there was substantial corroboration of the informant's tip by the police. This verification included details as to the particular apartment building, the particular vehicle, the time frame, and the future actions of White, which could not have been easily predicted, such as her trip to the motel. *Id.*

In the instant case, the police had reasonable suspicion to stop Appellant based upon the tip from a proven reliable confidential informant known by name and reputation to the officers. *United States v. Padro,* 52 F.3d 120 (6th Cir. 1995)( identified informants are to be given more weight than anonymous tips.) The key details of the tip were independently corroborated by the police through their surveillance of Burdette's apartment and Appellant's actions as well as from

the description of Appellant's vehicle to the officers. Further, the tip accurately provided future predictive acts (i.e., Appellant's arriving at Burdette's apartment to pick up Burdette) that were substantiated. We conclude that, under the totality of the circumstances, the informant's tip "had been sufficiently corroborated to furnish a reasonable suspicion the defendant was engaged in criminal activity." *White, supra.* Thus, the tip also had the sufficient objective indicia of reliability to be the sole basis for stopping Appellant.

Appellant also argues that once the police officers searched his car and did not discover any contraband, they lacked the probable cause necessary to arrest him. Despite the fact that the police officers testified that Appellant was not under arrest when they took him into Burdette's apartment, and the Court of Appeals so concluded, Appellant relies on the recent decision in *Kaupp v. Texas,* 538 U.S. 626, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003), wherein the United States Supreme Court held that the defendant was arrested within the meaning of the Fourth Amendment where he was handcuffed and taken to another location for questioning. Herein, Appellant was handcuffed and taken into Burdette's apartment where he was searched.

▇▇▇▇ An investigative *Terry* stop may indeed ripen into an arrest through the passage of time or the use of force. *See United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Centanni v. Eight Unknown Officers,* 15 F.3d 587, 590 (6th Cir.1994) *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). When this occurs, the continued detention of suspects must be based upon probable cause. *United States v. Avery,* 137 F.3d 343, 349 (6th Cir.1997). Although there is no bright line that distinguishes an investigative stop from a de

facto arrest, *Florida v. Royer,* 460 U.S. 491, 506, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the length and manner of an investigative stop should be reasonably related to the basis for the initial intrusion. *United States v. Palomino,* 100 F.3d 446, 449 (6th Cir.1996). And the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This is because there is a substantial law enforcement interest in preventing the flight of a suspect in the event that incriminating evidence is found, in protecting the safety of the officers, and in the orderly completion of the search which is facilitated by the presence of the suspects.

Appellant's reliance on *Kaupp v. Texas, supra,* is misplaced. In *Kaupp,* the seventeen-year-old defendant was awakened at three in the morning by police officers and taken from his home in handcuffs, wearing only underwear despite the fact that it was January. He was thereafter transported to a police station for questioning. Here, Appellant was taken only a few feet away into Burdette's apartment. Police officers testified that he was handcuffed as a routine safety measure. Further, Appellant was detained briefly and searched, after which he was arrested upon the discovery of drugs in the location specified by the informant.

We are of the opinion that, even though the police did not discover any drugs or contraband in Appellant's car, they still had sufficient probable cause at that time to believe that Appellant was in the process of or about to commit a crime. At common law, a peace officer was authorized to arrest without a warrant for a felony not committed in his presence if there were reasonable grounds for making the arrest. Wilgus, *Arrest Without a*

*Warrant,* 22 Mich. L.Rev. 541 (1924). This rule remains valid in Kentucky through express statutory authorization under KRS 431.005(1)(c), which provides: "(1) A peace officer may make an arrest . . . (c) without a warrant when he has probable cause to believe that the person being arrested has committed a felony."

Recently, in *Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003), the United States Supreme Court again engaged in an in-depth analysis of the concept of probable cause:

> The long-prevailing standard of probable cause protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while giving "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). On many occasions, we have reiterated that the probable-cause standard is a " 'practical, nontechnical conception' " that deals with " 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Brinegar, supra,* at 175–176, 69 S.Ct. 1302); *see, e.g., Ornelas v. United States,* 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S., at 232, 103 S.Ct. 2317[, 76 L.Ed.2d 527].

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. *See* ibid. *Brinegar,* 338 U.S., at 175, 69 S.Ct. 1302[, 93 L.Ed. 1879]. We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," ibid. (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with respect to the person to be searched or seized, *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Illinois v. Gates,* we noted:

> > "As early as *Locke v. United States,* [11 U.S. (7 Cranch)] 339, 348, 3 L.Ed. 364 (1813), Chief Justice Marshall observed, in a closely related context: '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which warrant suspicion.' More recently, we said that 'the quanta . . . of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar,* 338 U.S., at 173, 69 S.Ct. 1302. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." 462 U.S., at 235, 103 S.Ct. 2317.

 As the United States Supreme Court has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all

that is required. Furthermore, this Court has recently stated that when probable cause is based in part on a tip from an informant, the "totality of the circumstances test requires a balancing of the relative indicia of reliability accompanying an informant's tip." *Lovett v. Commonwealth*, Ky., 103 S.W.3d 72, 78 (2003). And as noted in *Gates, supra*, an informant's tip predicting future behavior, which is then corroborated by observations of the investigating officers, can result in a finding of probable cause. *Gates, supra* at 243–46, 103 S.Ct. 2317.

Applying these concepts herein, we conclude that the police officers had probable cause to arrest Appellant, regardless of whether such did, in fact, occur. The informant's information had accurately described the location of Burdette's apartment, the description of Appellant and his vehicle, as well as future predictive acts by Appellant. The informant stated that Appellant would be carrying the drugs on his person, not in his car. Thus, the fact that officers did not discover anything during the search of Appellant's car is irrelevant to the issue of whether there was probable cause to believe Appellant was carrying cocaine on his person.

Finally, Appellant argues that the police lacked probable cause to conduct the strip search. Having already discussed that police had probable cause to arrest Appellant, his argument with regard to the search must fail as well.

Based upon the information provided by a reliable informant, officers had probable cause to believe Appellant's body contained evidence of a crime and unlawful drugs. Also, the officers had good reason to fear that, unless restrained, Appellant would destroy the drugs before they could obtain a warrant. The probability of destruction in anticipation of a warrant exemplifies the kind of present risk that undergirds the accepted exigent circumstances exception to the general warrant requirement. *Schmerber v. California*, 384 U.S. 757, 770–771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Thus, police imposed a restraint that was limited and tailored to reasonably secure law enforcement need.

Even under the Court of Appeals' conclusion that Appellant was not under arrest at the time of the search, such was still reasonable under the circumstances. A warrantless search preceding arrest is reasonable under the Fourth Amendment so long as probable cause to arrest existed before the search, and the arrest and search were substantially contemporaneous. *State v. Overby*, 590 N.W.2d 703 (N.D.1999). Once an officer has probable or reasonable cause, the officer may arrest the person without a warrant, and in such situations it is immaterial that a search of the person without a search warrant may precede his arrest. *United States v. Torres*, 740 F.2d 122 (2d Cir.1984).

In *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the United States Supreme Court found that postal officers may make a warrantless arrest for felonies if they have reasonable grounds to believe that a felony has been or is being committed. The Court reasoned that information from a reliable informant that the defendant possessed stolen credit cards created probable cause. In *People v. Champion*, 452 Mich. 92, 549 N.W.2d 849 (1996), cocaine found in a pill bottle in the defendant's sweatpants during a pat-down search for weapons was properly seized even though the arrest occurred after the police officer opened the pill bottle, since the officer was authorized to open the bottle under the search incident to arrest exception to warrant re-

quirement. In *State v. Murphy,* 3 Or.App. 82, 471 P.2d 863 (1970), a search without arrest of the defendant's person by police when he arrived at an informer's home was based on probable cause because the female informer advised police that the defendant was coming to her home with marijuana and that she didn't want him to come, and any delay to obtain a search warrant would have resulted in loss of the evidence sought.

In *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the defendant admitted ownership of drugs that police found in a companion's purse. *Id.* at 101, 100 S.Ct. at 2558. The police subsequently searched the defendant, discovering a knife and $4,500 in cash, and arrested him. *Id.* The Court reasoned that it was not "particularly important that the search preceded the arrest" when the police had probable cause to arrest the defendant before the search and "the formal arrest followed quickly on the heels of the challenged search." *Id.* at 111, 100 S.Ct. 2556; *see e.g., United States v. Bizier,* 111 F.3d 214, 219 (1st Cir.1997) (search of defendant before formal arrest valid because police had probable cause to arrest based on controlled drug buys four days earlier); *United States v. Han,* 74 F.3d 537, 541 (4th Cir.1996) (search of defendant's bag immediately before formal arrest was valid because police had probable cause to arrest defendant before search based on informant's description and officers' observation of suspect talking with known drug source).

Examining the totality of the circumstances and information available to officers at that time, we cannot conclude that the trial court's denial of Appellant's motion to suppress the evidence obtained as a result of the search and seizure was clearly erroneous.

## III. THE TRIAL COURT DID NOT COERCE A VERDICT.

■ The jury in this case conducted a combined persistent felony offender (PFO) proceeding and penalty phase. During deliberations, the jury informed the trial court that it was dead locked hung as to the PFO penalty instruction. When asked if further deliberations would be helpful, the jury replied that it would not. The trial court then read the elements of RCr 9.57 and charged the jury to continue deliberations. No objection was entered. Nonetheless, Appellant now asks this Court to review the matter for palpable error under RCr 10.26, on the grounds that the trial court manufactured a verdict by reading RCr 9.57 to the jury after having been informed that further deliberations would not be fruitful, and by charging the jury to continue deliberations.

We conclude that it was permissible for the trial court to read RCr 9.57, considering that the jury had only deliberated about two hours when the foreperson informed the trial court that further deliberations would not be helpful. Furthermore, any possibility of coercion was vitiated by the trial court's instruction to the jurors that they should not relinquish honest convictions for the mere purpose of obtaining a verdict. *Commonwealth v. Mitchell,* Ky., 943 S.W.2d 625 (1997). No error, palpable or otherwise, occurred.

## IV. THE VOIR DIRE ON RANGE OF PENALTIES.

Relying on *Lawson v. Commonwealth,* Ky., 53 S.W.3d 534 (2001), Appellant argues that the trial court erroneously advised the jury that the possible range of penalties for first-degree trafficking in a controlled substance was one to twenty years imprisonment. He points out that the trafficking charge, a Class C felony, carries a sentence of five to ten years,

which would be enhanced to ten to twenty years pursuant to the second-degree PFO charge. Nonetheless, the trial court permitted the Commonwealth to advise the jury on a penalty range of one to twenty years due to the possibility of a lesser-included offense instruction.

In *Lawson, supra,* this Court held that voir dire should be limited to "the jurors' ability to consider *only* the penalty ranges for the individual indicted offenses" without PFO enhancement and without the possibility of a lesser-included offense. *Id.* at 544 (emphasis added). As such, under *Lawson* the trial court clearly erred in permitting the Commonwealth to voir dire on a penalty range of one to twenty years.

Notwithstanding, the error was to Appellant's advantage because he was tried by a jury that expressed its willingness to impose a one-year sentence. Furthermore, as noted by the Court of Appeals, the jury was instructed on the lesser-included offense of possession of a controlled substance, a Class D felony, which carries a penalty of one to five years. Thus, any error during voir dire must be deemed harmless. RCr 9.24.

## V. CONTROL OF CROSS–EXAMINATION WAS PROPER.

Appellant contends that his right to confront and cross-examine Detective Green was violated when the trial court, after the Commonwealth and defense counsel had questioned Detective Green, allowed the jury to ask him questions without Appellant being able to follow up. We disagree.

Trial courts retain broad discretion to regulate cross-examination. In *Commonwealth v. Maddox,* Ky., 955 S.W.2d 718, 721 (1997), we noted, "Defendants cannot run rough-shod, doing pre-cisely as they please, simply because cross-examination is underway. So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." Appellant was able to reasonably complete the picture of Detective Green's veracity, bias and motivation. Thus, the trial court did not abuse its discretion in prohibiting defense questions after Detective Green was questioned by the jury. Further, the trial court properly determined the duration of cross-examination. *Caldwell v. Commonwealth,* Ky., 503 S.W.2d 485 (1972); *Stanford v. Commonwealth,* Ky., 793 S.W.2d 112 (1990).

The judgment and sentence of the Jefferson Circuit Court are affirmed.

LAMBERT, C.J., COOPER, GRAVES, KELLER and WINTERSHEIMER, J.J., concur.

JOHNSTONE, J., dissents in a separate opinion in which STUMBO, J., joins.

JOHNSTONE, Justice, dissenting.

Because I do not believe that probable cause existed to arrest Appellant, I respectfully dissent. Simply put, the majority's opinion flatly contradicts a principle that lies at the heart of the Fourth Amendment: an arrest must be for an offense and not as a pretext to search for incriminating evidence. *United States v. Lefkowitz,* 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932).

I agree with the majority opinion with respect to the validity of the initial stop of Appellant. Based on the informant's tip, there existed a reasonable and articulable suspicion to perform a *Terry* stop on Appellant. However, there was no probable cause to arrest Appellant and, therefore, the search of Appellant's person was unlawful.

Detective Thomas received a confidential tip from a reliable informant that a black male named Jermaine would arrive at Burdette's apartment in a blue El Camino with gray primer spots. The tipster went on to advise that Appellant would be carrying a large quantity of crack cocaine in his buttocks. While surveilling the apartment, Detective Thomas observed Burdette leave his apartment and exit the premises in a white Toyota. Burdette was arrested a short distance away and consented to a search of his apartment. Upon their return to the apartment parking lot, Detective Thomas and his fellow officers noticed Appellant in the blue El Camino with gray primer spots. The three officers surrounded the car and ordered Appellant to exit the vehicle. After informing Appellant that he was under investigation for trafficking in cocaine, he confirmed that his name was Jermaine and he was at the location to visit Burdette. Appellant consented to a search of his car; no drugs or weapons were found in the car. At that point, Appellant was read his rights, handcuffed, and taken into Burdette's apartment. The three officers first commenced a search of Burdette's apartment, finding a partially consumed marijuana cigarette, but no cocaine. The officers then began questioning Appellant, who again denied having any contraband on his person. The officers replied that they were aware the cocaine was in his buttocks; Appellant continued to deny possessing any drugs. The officers then took Appellant into a small bathroom; due to its size, two officers were in the bathroom with Appellant while a third watched from the doorway. The officers pulled back the waistband of Appellant's sweatpants and underwear, and saw a plastic bag protruding from Appellant's buttocks. Appellant then agreed to retrieve the drugs himself, which he did. He was formally placed under arrest.

In determining whether a seizure within the meaning of the Fourth Amendment has occurred, an objective standard is used. The reviewing court must look at the totality of the circumstances and analyze whether the behavior of the police would communicate to a reasonable person that he was not free to leave. *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389, 400 (1991). The U.S. Supreme Court, in *United States v. Mendenhall*, enumerated certain circumstances that indicate a seizure has occurred, including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980).

The facts of record unequivocally support a finding that Appellant was under arrest before being taken up to Burdette's apartment. According to the testimony of Detective Thomas, Appellant's car was blocked in so that he was unable to leave by vehicle. Three officers surrounded Appellant, who was alone. He was informed that he was under investigation for drug trafficking, was read his *Miranda* rights, and was handcuffed. Even more persuasive to a finding that Appellant was under arrest is the testimony of Detective Thomas himself. During the suppression hearing, Detective Thomas plainly conceded that Appellant was not free to go. In my opinion, any reasonable person in Appellant's circumstances, especially one that has been read his *Miranda* rights and handcuffed, would believe that he was not at liberty to leave.

Probable cause must exist at the time of the arrest. Whether probable cause existed at the time Appellant was arrested—*i.e.*

outside of Burdette's apartment building—depends "upon whether, at the moment the arrest was made, ... the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio.* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964). In other words, the existence of probable cause must be determined by an examination of the totality of the circumstances.

Returning to the case at bar, the facts as known by the officers at the time they arrested Appellant were insufficient to establish probable cause. The officers' suspicion that Appellant was carrying narcotics was based entirely on the information provided by the confidential informant. "[T]he sufficiency of probable cause for a search and an arrest without a warrant may be based upon information received through an informant so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Waugh v. Commonwealth,* Ky.App., 605 S.W.2d 43, 45 (1980). Here, Detective Thomas had known the confidential informant for approximately five years and this informant had provided accurate information in the past. However, other factors severely undermine the reliability of the tip. First, the tip is extremely basic. While one portion of the tip predicted the location of Appellant's contraband, the remaining portions of the tip were completely innocuous: the make and color of Appellant's car and the fact that he would visit a certain friend later in the evening. The richness of detail provided by an informant increases the reliability of the information. *United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994), *cert. denied,* 513 U.S. 1009, 115 S.Ct. 531, 130 L.Ed.2d 434 (1994). Nor did the informant state his or her basis of knowledge, which further undercuts the reliability of the tip. *Illinois v. Gates,* 462 U.S. 213, 227, 103 S.Ct. 2317, 2326, 76 L.Ed.2d 527, 541 (1983). Of course, in examining the totality of the circumstances surrounding the arrest, any deficiency in a tip's reliability can be supplemented by sufficient police corroboration. *United States v. Padro,* 52 F.3d 120, 123 (6th Cir.1995). However, that did not occur in this case. The tip was so barren of predictive facts that the police had little information to corroborate. That Appellant in fact arrived at a given location in a certain car is simply not sufficient police corroboration upon which to root probable cause for an arrest and invasive body search. Furthermore, it must be noted that the only behavior corroborated by the police was completely lawful behavior that in no way evidenced drug possession. Though the facts must be viewed in light of the totality of the circumstances, courts are traditionally reluctant to ascribe criminal intent to otherwise lawful behavior. *United States v. Avery,* 137 F.3d 343, 350 (6th Cir.1997). Having corroborated nothing other than the make and color of Appellant's car and his presence at the predicted location, and further having found no contraband after Appellant consented to a search of his vehicle, the officers simply did not have enough information upon which to establish probable cause to effectuate a warrantless arrest. Accordingly, I believe Appellant was arrested in contravention of his Fourth Amendment rights and the fruits of that illegal arrest should have been suppressed.

The officers here did not make a general investigation of Appellant's person; rather, they conducted a targeted and extremely humiliating search. Having absolutely no independent indication of contraband or unlawful activity prior to the

search or the arrest, the officers' conduct cannot be accurately described as anything other than an exploratory search for incriminating evidence. Appellant was arrested in violation of his Fourth Amendment protections because his warrantless arrest was based on less than probable cause. We cannot retrospectively adjudge this search lawful simply because illegal contraband was eventually found. The protections of the Fourth Amendment must extend to offenders as well as the law abiding.

STUMBO, J., joins this dissenting opinion.