**Vanessa CARTER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–CA–000800–MR.

Court of Appeals of Kentucky.

May 6, 2011.

Discretionary Review Denied by Supreme Court Feb. 15, 2012.

---

Brandon Neil Jewell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Jeffrey A. Cross, Assistant Attorney General, Frankfort, KY, for appellee.

Before KELLER, NICKELL, and STUMBO, Judges.

*OPINION*

KELLER, Judge:

Vanessa Carter (Carter) appeals from the circuit court's denial of her motion to suppress information about her which was obtained by a police officer from records in the Kentucky All–Schedule Prescription Electronic Reporting System (KASPER). For the following reasons, we affirm.

FACTS

The facts are not in dispute. Detective George Workman (Workman) received information from a physician's office and another detective that Carter was possibly

"doctor shopping." Workman then requested a KASPER report from the Cabinet for Health and Family Services regarding Carter's prescription medication history. The KASPER report indicated that Carter had obtained over-lapping prescriptions for various scheduled medications from several different physicians. Workman contacted several of Carter's physicians who reported that they were unaware that Carter had obtained over-lapping prescriptions and, had they known, they would not have prescribed Carter's medication. Workman then arrested Carter and she was charged with and indicted on a number of counts of obtaining controlled substances by deception.

Following her indictment, Carter filed a motion to suppress, arguing that Workman conducted an unlawful search of KASPER. The trial court, somewhat reluctantly, denied Carter's motion. Carter then entered a conditional guilty plea and this appeal followed.

## STANDARD OF REVIEW

Generally, the standard of review on a suppression motion is twofold, with deference being granted to the trial court as to factual findings and the trial court's legal conclusions being subject to *de novo* review. *See* RCr 9.78; *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002); *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998). However, because the issues on appeal primarily involve questions of law, our review herein is *de novo*.

## ANALYSIS

Carter argues that: (1) she had a reasonable expectation of privacy in her prescription records and those records were protected from warrantless search and seizure; and (2) even if her records in KASPER were not protected from unlawful search, Workman did not have sufficient

justification to conduct his search. The Commonwealth argues that: (1) a review of KASPER records is not a "search;" (2) even if that review is a search, Carter had no reasonable expectation of privacy; and (3) Workman's KASPER review was within the parameters set forth in Kentucky Revised Statute (KRS) 218A.202.

At the outset, we note that "[a]ll searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant." *Gallman v. Commonwealth*, 578 S.W.2d 47, 48 (Ky.1979). Therefore, we first address whether Carter had any expectation of privacy and whether Workman's review of her KASPER records amounted to a search.

In support of her argument that she had an expectation of privacy and that her prescription records were protected from warrantless search, Carter cites to a case from Louisiana and to cases from a number of Federal Courts of Appeal. While the federal cases are of some interest, we note that the majority of them involve a person's expectation of confidentiality, i.e. that medical information will not be shared with third parties, rather than the expectation of privacy, i.e. protection from government intrusion.

However, the Louisiana case, *State v. Skinner*, 10 So.3d 1212 (La.2009), involved a criminal investigation that is similar to the case herein. In *Skinner*, the district attorney received a tip from a pharmacist that Skinner was obtaining medication with multiple overlapping prescriptions. Based on that tip, the district attorney filed motions for production of prescription and medical records in district court. The district court issued an order requiring eight pharmacies to produce Skinner's records. The district attorney then prosecuted Skinner based on information derived

from those records. On appeal, the Louisiana Supreme Court held that, absent one of the narrowly drawn exceptions, Skinner's prescription records were protected from warrantless search and seizure as part of a criminal investigation. Because the district attorney failed to obtain a search warrant, the Louisiana Supreme Court concluded that the information obtained from the pharmacies should have been suppressed.

Having noted the above, we are bound to follow the dictates of our Supreme Court. SCR 1.030(8)(a). In *Williams v. Commonwealth*, 213 S.W.3d 671 (Ky.2006), the Supreme Court of Kentucky determined that the citizens of the Commonwealth have no expectation of privacy with regard to their pharmacy records in KASPER.

> It is axiomatic that "application of the Fourth Amendment [and Section 10 of Kentucky's constitution] depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).... [W]e find that examination of KASPER reports by authorized personnel pursuant to KRS §§ 218A.202(6)(a) & (b) does not constitute a "search" under the Fourth Amendment or Section 10 of Kentucky's constitution, since citizens have no reasonable expectation of privacy in this limited examination of and access to their prescription records.

*Id.* at 682.

Our Supreme Court then analogized records in KASPER to pen registers, which are used by telephone companies to track incoming and outgoing calls. Pen registers only track phone numbers and the time calls are made or received. They do not reveal anything about the content of the calls. As noted by our Supreme Court, the United States Supreme Court held that citizens have no expectation that such information is private.[1] *Id.*

In similar fashion, a KASPER report conveys only limited data to a restricted number of persons. First, it does not report the dispensation of all substances by practitioners or pharmacists but only those substances classified as "Schedules II, III, IV, and V controlled substances." KRS § 218A.202(1). Second, nothing in a KASPER report discloses a patient's condition, treatment, or communications with his or her physician, as the report merely conveys the patient's name, the drug dispensed, the date of dispensing, the quantity dispensed, the prescriber, and the dispenser. KRS § 218A.202(4). Finally, KASPER data is not available to the general public, but rather only to specified personnel who certify that they are conducting "a bona fide specific investigation involving a designated person." KRS § 218A.202(6)(a) & (b).

Furthermore, it is well known by citizens that any prescriptions they receive and fill will be conveyed to several third parties, including their physician, their pharmacy, and their health insurance company. As noted by the Court of Appeals ... pharmacy records have long been subject not only to use and inspection by pharmacies, physicians, and health insurance companies but also to inspection by law enforcement and state regulatory agencies.

*Id.* at 683 (some citations omitted).

Our Supreme Court then reviewed other instances where citizens have little or no

---

1. *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

expectation of privacy, including information on the outside of mail and financial information conveyed to banks and bank employees. *Id.* Finally, our Supreme Court recognized the competing interests of law enforcement and a citizen's right to be free from unwarranted governmental intrusion. Balancing those interests, the Court concluded

> that disclosure of KASPER data to authorized law enforcement personnel and other state actors pursuant to KRS § 218A.202 by third parties who obtained the information in the ordinary course of business does not infringe upon or otherwise manipulate any well-recognized Fourth Amendment or Section 10 freedoms.

*Id.* at 683–84.

Based on the preceding, we are constrained to hold that Carter had no expectation that her KASPER prescription records were private or subject to Fourth Amendment protection from warrantless search and seizure. However, we feel obliged to point out what we believe are deficiencies in the Supreme Court's analysis in *Williams*. Initially, we note that a pen register reveals only phone numbers and the date and time of a telephone call. It does not reveal the substance of the call, who made the call, or who answered the call. As a result, little additional information can be gleaned from pen registers.

However, a prescription record reveals the type and amount of medication prescribed, the prescribing physician, the date of the prescription, and the pharmacy where the prescription was filled. With internet access or a telephone book and a copy of the *Physicians' Desk Reference*, a person with the information contained in a KASPER report may, within a fairly narrow range, be able to determine the condition or conditions being treated. The Supreme Court's statement to the contrary

notwithstanding, we believe that the citizens of the Commonwealth have a legitimate privacy expectation regarding their medical conditions.

Noting the preceding, we next address how to apply KRS 218A.202 under *Williams* and how we believe it should be applied.

■ Carter argues that Workman did not have sufficient justification under KRS 218A.202 to request a report of her prescription records. KRS 218A.202(6) provides, in pertinent part, that

> [t]he Cabinet for Health and Family Services shall be authorized to provide data to:
>
> . . .
>
> (b) A Kentucky peace officer certified pursuant to KRS 15.380 to 15.404, a certified or full-time peace officer of another state, or a federal peace officer whose duty is to enforce the laws of this Commonwealth, of another state, or of the United States relating to drugs and who is engaged in a bona fide specific investigation involving a designated person[.]

According to Carter, Workman was required to show that he had probable cause to believe that a crime was being committed in order to establish that he was "engaged in a bona fide specific investigation of a designated person." We are constrained by *Williams* to disagree for two reasons. First, as stated above, Carter's KASPER records under *Williams* are not subject to Fourth Amendment protection from unreasonable search and seizure. Therefore, Workman was not required to articulate a reason sufficient to meet Fourth Amendment requirements in order to obtain Carter's records. He was only required to show that he was involved in a bona fide specific investigation of a designated person.

Under *Williams,* Workman's testimony that he received information from another detective and "someone" in a physician's office was sufficient to establish that he was engaged in a bona fide specific investigation. Therefore, under *Williams,* we are constrained to affirm.

However, we believe that, at a minimum, a police officer must have a reasonable suspicion that criminal activity is afoot in order to establish that he is conducting a bona fide specific investigation. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As outlined in *Terry* and *Williams v. Commonwealth,* 147 S.W.3d 1, 5 (Ky.2004), an " 'officer need not be absolutely certain that the individual' is engaged in an unlawful enterprise; 'the issue is whether a reasonably prudent man in the circumstances would be warranted in his belief' that the suspect is breaking, or is about to break, the law." *Williams,* 147 S.W.3d at 5 (*citing Terry,* 392 U.S. at 27, 88 S.Ct. 1868). We do not believe that placing this standard on law enforcement personnel would create an undue hardship since it is not likely that the KASPER records will disappear or otherwise be compromised while an officer obtains verifiable information that criminal activity is afoot. Furthermore, applying the standards from *Terry* and its progeny will clearly define what constitutes a bona fide specific investigation.

We would not apply this standard to "[a] designated representative of a board responsible for the licensure, regulation, or discipline of practitioners, pharmacists, or other person who is authorized to prescribe, administer, or dispense controlled substances[,]" KRS 218A.202, because persons subject to those investigations do not have any expectation of privacy.

## CONCLUSION

Because we are bound to follow *Williams,* we are constrained to affirm.

However, as noted above, we question at least a portion of the holding in *Williams,* and would require law enforcement officers to comply with the standards set forth in *Terry v. Ohio* and its progeny before undertaking a search of the KASPER system.

ALL CONCUR.